safe was entered by some one connected with the store.

On the whole, we think the jury reached the proper conclusion.

### Decree.

The judgment appealed from is therefore affirmed.

OVERTON and ROGERS, JJ., dissent.

⸻

(102 So. 325)

No. 26255.

## TYLER v. WHITNEY–CENTRAL TRUST & SAVINGS BANK (LEWIS et al., Interveners.)

(Nov. 3, 1924.   Rehearing Denied Dec. 1, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Bills and notes ☞188, 357—Notes indorsed in blank payable to bearer; pledgee accepting negotiable notes, indorsed in blank by maker, without knowledge that bearer had no right to pledge them, acquires legal right thereto.**

Negotiable notes, payable to order of maker, who indorsed them in blank and delivered them, became payable to bearer, who could pledge them, and one to whom offered could acquire legal right thereto as pledgee, if he accepted them without knowledge that bearer actually had no right to pledge them.

2. **Bills and notes ☞163—Mere statement in note of transaction giving rise thereto does not render it nonnegotiable.**

Under Negotiable Instruments Law, § 1, note containing provision qualifying or limiting promise to pay, as by making it subject to terms and conditions of contract referred to, is not negotiable, though payable to order, but mere statement of transaction giving rise to instrument does not render it nonnegotiable (section 3).

3. **Bills and notes ☞163—That note shows on face that consideration is executory does not render it nonnegotiable.**

While obligations are read and construed in connection with law pertaining to them, note is not nonnegotiable merely because it shows on face that consideration is executory.

4. **Bills and notes ☞343—Mere knowledge acquired outside instrument that consideration executory does not make indorsee holder not in due course.**

Mere knowledge, acquired outside of negotiable instrument, at or before time of acquisition by indorsee for value before maturity, that consideration is executory does not make indorsee holder not in due course.

5. **Bills and notes ☞163—Note held not made nonnegotiable by recital that value was to be received in rent.**

Mere recital in notes that their value is "to be received in rent" *held* not to make them nonnegotiable, as showing on their face that promise to pay is conditional on nonoccurrence of contingencies, such as destruction of property, relieving lessee from obligation to pay rent.

6. **Evidence ☞82—Supreme Court presumed to have considered correct one of two copies of note sued on in deciding case cited as authority.**

Presumption is that Supreme Court, in deciding case cited as authority, the report of which contains conflicting copies of the notes sued on, had in mind the correct copy, and failed to detect error in other copy.

7. **Bills and notes ☞165—"As per contract," so placed in note as not to qualify promise to pay, does not render it nonnegotiable.**

Expression "as per contract," so placed in note as not to qualify promise to pay, does not render note nonnegotiable.

8. **Bills and notes ☞343—"As per lease this date," following statement that value was to be received in rent held not to render notes nonnegotiable.**

Expression "as per lease this date," immediately following statement, in separate sentence from promise to pay, that value was to be received in rent, *held* not to render notes nonnegotiable, in view of Negotiable Instruments Law, § 3.

9. **Bills and notes ☞343—Recital that notes were given in consideration of executory contract does not make holder one not in due course.**

Recital in notes that they were given in consideration of contract, which is executory, does not make holder one not in due course.

**10. Bills and notes** ☜337—**Requirements to constitute one "holder in good faith" stated.**

To constitute one a "holder in good faith" he must have had no actual knowledge of any infirmity in note or defect in title of person negotiating it at time of negotiation to him, nor any knowledge of such facts that his action in taking it amounted to bad faith. Negotiable Instruments Law, §§ 52, 56.

**11. Bills and notes** ☜497(2) — **Burden on pledgee of notes to which pledgor had no title to show that it was holder in due course.**

Lessors having shown that their agent had no title to lessee's notes, which he pledged for his own debt, burden shifted to pledgee, in lessors' suit to recover them, to show that it was holder in due course, under Negotiable Instruments Law, § 59.

**12. Bills and notes** ☜525—**Notes and other evidence held insufficient to show that pledgee acted in bad faith.**

That negotiable notes showed on face that they were given for rent, and were prepared on pledgor's forms, and that pledgee had knowledge therefrom or otherwise that pledgor was real estate agent, *held* insufficient to show that pledgee had notice or knowledge of pledgor's lack of authority to pledge notes.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

Suit by Edith M. Tyler against the Whitney-Central Trust & Savings Bank, in which Lucretia M. Lewis and others intervened. Judgment for plaintiffs and interveners, and defendant appeals. Judgment set aside, and plaintiff's and interveners' demands ordered rejected.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

Dart & Dart and Guion & Lambremont, all of New Orleans, for appellees.

OVERTON, J. Plaintiff and the interveners in this case are the owners in indivision of certain real property situated in this city. They leased a part of the property owned by them to the Maloney Belting Company, another part to the Sutter Van Horn Company, and still another part to M. Heismann. In effecting these leases plaintiff and interveners were represented by Lionel M. Ricau, a well-known real estate agent of this city. Ricau was vested with certain discretion as to how much rent the property intrusted to him should bring. After leasing the property, his duty was to collect the rent, pay the bills for such minor repairs as were chargeable to the lessors, pay the taxes and the insurance, and remit the balance, less his commission, to the plaintiff and the interveners.

In effecting the leases Ricau took from the lessees their respective promissory notes as consideration for the leases. With the exception of the dates, the name of each maker, and the amounts for which the notes were executed, each note given reads as follows, to wit:

"$85.00. New Orleans, La., October 1, 1918.

"On May 1, 1920, we promise to pay to the order of ourselves eighty-five and no/100 dollars at ———, with 8 per cent. interest per annum from maturity until paid. Value to be received in rent for store No. 443 Camp street for month of April, 1920, as per lease this date."

On the left side of the face of each note, printed in large letters, appears the following:

"Rent Note.
"Lionel M. Ricau,
"Real Estate Auctioneer,
"511 Hennen Building."

Each note is indorsed in blank by the maker.

Ricau without authority from his principals, pledged the notes obtained by him prior to their maturity to secure the payment of money borrowed by him from defendant. At that time Ricau was in arrears in his settlements with plaintiff and interveners in a large amount.

Plaintiff, having learned of the disposition made by Ricau of the notes, instituted this suit to recover them for herself and her co-owners. The latter intervened in the suit,

joining plaintiff in her efforts to recover the notes for herself and for them.

The position of plaintiff and interveners is that Ricau was without right to dispose of or pledge the notes, and the position of defendant, in so far as it is necessary to state it, is that the notes are negotiable, and that it accepted them, as pledgee, prior to maturity, in the regular course of business, and without any intimation or knowledge that Ricau did not have a perfect right to pledge them, and hence that it acquired a legal right to them as pledgee.

### Opinion.

[1] The notes in controversy fulfill all of the requirements for negotiable instruments, unless it be that the promise to pay is rendered conditional by the last sentence contained in them. Section 1 of Act 64 of 1904 (Negotiable Instruments Law). If the notes are negotiable, then as each was made payable to the order of the maker, and by the maker indorsed in blank and delivered, each, by such indorsement, became, in effect, payable to bearer, and Ricau, as their bearer, was in position to pledge them, and the one to whom they were offered in pledge was in position to acquire a legal right to them as pledgee, provided such person accepted them without knowledge that Ricau had, as a matter of fact, no right to pledge them.

Therefore, as it is beyond dispute that the pledgee acquired the notes in pledge, for value, before maturity, the only questions to be determined are: (1) Were the notes negotiable? (2) If so, did the pledgee accept them in pledge without knowledge of the fact that Ricau, in reality, had no title to them? If these questions should be answered in the affirmative, it then will become obvious that the demand of plaintiff and interveners must be rejected.

[2] At the outset, it may be observed that for a promissory note to be negotiable the promise to pay must be unconditional. Section 1, Negotiable Instruments Law (Act 64 of 1904). Hence it follows that, although a note may be made payable to order, still, if it should contain a clause or sentence, qualifying or limiting the promise to pay, thereby making the promise conditional, then, notwithstanding that the note is made payable to order, it is not negotiable. Thus, when the promise to pay is made subject to the terms and conditions of a contract referred to in the note, the note is nonnegotiable. Klots Throwing Co. v. Manufacturers Commercial Co., 103 C. C. A. 305, 179 F. 813, 30 L. R. A. (N. S.) 40; Jenkins v. Parish of Caddo, 7 La. Ann. 559. On the other hand, if a sentence or clause in a note, which sentence or clause, it is contended, is a limitation on or qualification of what otherwise would be considered an absolute promise to pay, is not in fact such a limitation or qualification, but instead a mere statement of the transaction which gives rise to the instrument, then the fact that the note contains such a statement does not render it nonnegotiable. Negotiable Instruments Law, § 3.

In the case at bar plaintiff and interveners contend that the statement contained in the notes to the effect that their value is to be received in rent for certain premises and the reference made in them to the contract, as disclosed by the words "as per lease this date" immediately following that statement, render the notes nonnegotiable. In other words, plaintiff and interveners contend that the sentence in each of the notes reading, "Value to be received in rent for store No. ——, —— street (designating) for month of —— (specifying) as per lease this date," destroys the negotiability of each. This contention is based in part upon the fact that the notes show upon their face that the consideration for them is to be received for the enjoyment of the property leased, and the argument is made that since, under the law,

the 'lease ends, if during its existence the property let be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, it is the same, in view of the executory character of the lease, as if the notes read: "On the ——— day of ——— (stating the date) I promise to pay to the order of ——— ——— dollars (stating the payee and amount) in the event the property leased is not totally destroyed by an unforeseen event or taken for some purpose of public utility prior to the expiration of the month for which this note is given."

If the notes so read, there can be no question but that they would not be negotiable, for manifestly the promise to pay would be made to depend upon conditions, and therefore would not be absolute but instead qualified. Learned counsel for plaintiff and interveners would have the notes so read by injecting into them, as it were, some of the conditions under which the law relieves a lessee from the obligation to pay the rent stipulated in the lease, and accruing after the happening of the contingencies 'provided against.

[3] While it is true that obligations are read and construed in connection with the law pertaining to them, yet simply because a promissory note shows upon its face that the consideration for it is executory, and hence that something may intervene to prevent the consideration from being realized does not render the note nonnegotiable. In such an instance the inference is that the maker acted on the presumption that the contingency would not occur, and hence made the promise to pay absolute, and the note otherwise negotiable, and that the payee or indorsee accepted it accordingly. Thus the rule is stated in Corpus Juris, vol. 8, Bills and Notes, § 213, as follows:

"The fact that the consideration recited is executory will not change the rule (that is, make the note nonnegotiable), unless it appears from the recital that payment is made to depend on the performance or the execution of the consideration recited."

[4] And the rule applicable to the indorsee of a negotiable instrument, for value, before maturity, with respect to knowledge acquired outside of the instrument, at or before the time of its acquisition, that the consideration thereof is executory, is pertinent here. In such an instance it is held that mere knowledge that the consideration is executory does not make the indorsee a holder not in due course. Thus, in Daniel on Negotiable Instruments (4th Ed.) § 790, it is said:

"Nor is it a good ground of defense against a bona fide holder for value that he was informed that the note was made or the bill accepted in consideration of an executory contract, unless he was also informed of its breach."

And in Ruling Case Law, vol. 3, § 272, under the heading "Bills and Notes," it is said:

"The courts universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee, which has not been performed, will not deprive the indorsee of the character of a holder in due course, unless he also has notice of the breach of that agreement or · contract. * * * *"

And in Sadler v. White, 14 La. Ann. 177, a case in which a note was given in consideration of a contract of lease that was executory, and in which the defense was that the indorsee, who was plaintiff in the suit, knew at the time he acquired the note that its consideration was yet to be realized, and that as there had been, since his acquisition of the note, a failure of consideration he could not recover, this court in holding that the defense was insufficient said:

"It cannot affect the negotiability of a note that its consideration is to be hereafter realized, or that from some contingency it may never be enjoyed."

And in the case of Bank v. Cason, 39 La. Ann. 865, a question similar to the one in the Sadler Case was presented, and this court in

rejecting the defense quoted approvingly the foregoing excerpt; and again quoted it approvingly in Marx & Sons v. Frey, 137 La. 948, 69 So. 757, and also in Martel v. Lafayette Sugar Refining Co., 153 La. 248, 95 So. 706.

[5] Hence, in view of the authorities cited, which are based on correct principles, we conclude that the mere fact that the notes in controversy recite that their value is "to be received in rent" does not make them nonnegotiable. Something more is required to destroy their negotiability, and what more is required counsel for plaintiff and interveners contend is to be found in the words "as per lease this date," which immediately follow the clause "value to be received in rent for store No. ——, —— street (designating), for month of —— (specifying)." In short, the contention of counsel is that the words "as per lease this date" render the promise to pay subject to all of the terms and conditions of the lease; and therefore destroy the negotiability of the notes.

Similar words, with reference to their effect upon the negotiability of notes, have been considered by the courts. Thus in Waterbury-Wallace Co., Inc., v. Ivey, 99 Misc. Rep. 260, 163 N. Y. S. 719, the note declared upon read:

"Ninety-two (92) days after date I promise to pay to the order of Wallace Novelty Co., Inc. sixteen hundred dollars, at 66 Broadway, New York City. Value received, with interest as per contract of Nov. 12, 1915."

It was held, in passing upon the negotiability, vel non, of the note there sued upon, that the words "as per contract" did not qualify or limit the promise to pay, and make it subject to the terms and conditions of the contract, and therefore did not destroy the negotiability of the note.

And in National Bank of Newbury v. Wentworth, 218 Mass. 30, 105 N. E. 626, there was written on the face of each note sued upon

"value received as per contract," and the contention was that the effect of these words was to incorporate the contract into the notes, and thereby render them nonnegotiable by causing them to lack the absolute promise to pay a sum certain at a time fixed in the future, but the court held that the language used did not affect the payment of the amounts shown by the notes, as it did not modify or restrict the promise to pay those amounts at the time fixed in the notes, and therefore held that the notes were negotiable.

And in Doyle v. Considine, 195 Ill. App. 311, there appeared upon the face of the note sued upon the following: "This note is given in accordance with a land contract of even date herewith between E. H. Bauch and J. P. Considine," and in answer to the contention that the sentence quoted rendered the note nonnegotiable the court held that the sentence did not so render it.

And in First National Bank v. Badham, 86 S. C. 170, 68 S. E. 536, 138 Am. St. Rep. 1043, it was held that the words "as per contract" following the phrase "for value received" did not destroy the negotiability of the notes declared upon in that suit.

And in Strand Amusement Co. v. Fox, 205 Ala. 183, 87 So. 332, 14 A. L. R. 1121, there was written in the lower left-hand corner of the notes sued on, in a blank space, in a separate sentence from the one containing the promise to pay, after the abbreviation "No.," the phrase "as per contract," and the contention was that the phrase quoted destroyed the negotiability of the notes, but the court held that it did not have that effect, and ruled that the notes were negotiable.

[6] The foregoing cases rest upon the theory that the phrase "as per contract," or "in accordance with contract," as found in the notes considered in those cases did not have the effect of modifying the promise to pay and of thereby making the promise subject to the terms and conditions of the contracts to

which the references were made. On the other hand, in the case of the Continental Bank & Trust Co. v. Times Publishing Co., 142 La. 209, 76 So. 612, L. R. A. 1918B, 632, this court, if we accept as correct the copy of one of the notes sued upon in that case, as the copy thereof is made to appear in the opinion on rehearing, on pages 215 and 216 of the Louisiana Reports, and on page 615 of the Southern Reporter, reached a conclusion in conflict with the cases cited supra. In that case, in the opinion on rehearing, two copies of one of the notes sued upon are given to show the form and essential features of the remaining one. In the first copy the reference to the contract appears in a separate sentence from the one containing the promise to pay. If that copy is the correct one, the decision rendered is in conflict with the authorities cited supra. In the second copy the reference appears in the same sentence as the promise. If that copy is the correct one, then the decision is not in conflict with the authorities cited supra. Manifestly, the court in deciding the case had in mind only one of the two copies mentioned, and the presumption is that it had in mind the correct copy, and failed to detect the error—which was probably a stenographic one—in the other. The question therefore is, Which of the two copies is the correct one? The answer is, the second copy; that is the one in which the promise to pay and the reference to the contract appear in the same sentence. That this answer is correct we think is supported by all that remains of the record in that case. The promise and the reference appear in the same sentence in the copies of the notes appearing in the briefs filed by counsel in the case for both plaintiff and defendant; they so appear in the copy given in the application to this court, for a writ of review, and, we might add, in the original opinion rendered by the court; and, while the record never did contain a certified copy of the notes, and, while

the original notes sued upon which were sent up with the record in that case cannot be found, yet originals belonging to the same series have been found, and photographic copies of them show that the promise to pay and the reference to the contract appear in the same sentence. That they did so appear, and that the court was impressed with that fact, is also indicated by the following excerpt taken from the opinion under review, to wit:

"The whole contract must be expressed upon the face of the instrument, and, among other things, the promise to pay must be unconditional. But a promise is not unconditional *which is followed, in the same sentence*, with a stipulation to the effect that it will be fulfilled, as per another contract, whereby the payment is made contingent upon the nonhappening of fortuitous events." (Italics ours.)

We therefore conclude that, instead of the court having before it, in the case under review, notes which contained the promise to pay and the reference to the contract in separate sentences, it had in fact before it, and determined the case with such fact in view, notes, as expressed in the second copy given in the opinion on rehearing, that is, notes expressed as follows (leaving out the matter omitted by the court in its second copy) to wit:

"Shreveport, La., March 24, 1913.
"September 1, 1915, * * * I promise to pay to the order of myself one hundred and fifty dollars, * * * value received, rent for month of August, 1915 (or other month in the future), for part of brick building * * * in Shreveport, as per contract dated March 24, 1913."

Looking at the case from that standpoint, that is, that the notes in that case were viewed as so expressed by the court, we have no fault to find with the opinion rendered, nor do we consider the opinion in conflict with the authorities on the same subject cited supra. In notes so reading, the promise to pay is qualified by the reference to the contract,

and subjects the promise to the terms and conditions of the contract, for, as observed, in effect, by the court, the promise is to pay the amount stated on the day fixed as per the contract referred to, that is, in accordance with or subject to its terms.

[7] From the authorities cited we conclude that, when the expression "as per contract" is so placed as not to qualify the promise to pay, the use of the expression does not render the note nonnegotiable, but on the other hand, when that phrase is so placed as to qualify the promise, and thereby make it dependent on the terms and conditions of the contract, the note is nonnegotiable.

[8] In the case at bar the similar expression "as per lease this date" is found in a separate sentence from the promise to pay, and bears no relation whatever to the promise. In fact, the entire sentence in which the reference appears amounts to nothing more than a statement of the transaction which gives rise to the notes and which serves to identify them with the transaction. Such a statement and means of identification do not render the notes nonnegotiable. Negotiable Instruments Law, § 3; Ruling Case Law, vol. 3, § 106, p. 915.

We, therefore, conclude that the notes in the case at bar are negotiable; they being negotiable in all other respects.

[9] Plaintiffs and interveners, however, contend, in the event we should rule as we have, that defendant is not a holder in due course, and hence that, as Ricau pledged their property without authority from them, they are entitled upon that ground to recover the notes free from the pledge. We have heretofore held in this case that because the notes show upon their face that they were given in consideration of a contract which is executory does not affect their negotiability. The authorities cited in support of that ruling are equally applicable here, and show that such a recital does not make the holder one not in due course. But plaintiff and interveners contend that, when defendant accepted the notes in pledge, it was in possession of knowledge sufficient to show that Ricau had no right to pledge the notes, and hence that it is not a holder in due course.

[10] One of the requirements to constitute one a holder in good faith is that at the time the instrument was negotiated to him he had no notice of any infirmity in it or defect in the title of the person negotiating it. Section 52, Negotiable Instruments Law.

"To constitute notice of any infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Negotiable Instruments Law, § 56.

[11] As plaintiff and interveners have shown that Ricau was without title to the notes which he pledged for his own debt, the burden shifts to defendant to show that it is a holder in due course. Negotiable Instruments Law, § 59.

[12] The evidence on the question as to whether defendant is a holder in due course is as follows: Defendant's cashier, who handled the transaction, testified that when the notes were accepted in pledge neither he nor defendant had notice or knowledge of any equity in favor of any person, and that neither had knowledge that Ricau did not have a perfect right to pledge the notes. On the other hand, each note had printed upon its face, on the left-hand side, as we have heretofore observed, the following: "Rent Note. Lionel M. Ricau, Real Estate Auctioneer," and showed that it was given for rent. It also appears that defendant's cashier had known Ricau for some fifteen years, and knew that he was a prominent real estate agent.

The evidence given by the cashier is sufficient to show that defendant is a holder in

due course, unless the remaining facts that were within its knowledge show that it acted in bad faith, and this, we conclude, they do not show. True, the notes show that they were given for rent, and that they were prepared on one of Ricau's forms, and that Ricau was a real estate agent. True, it also appears that defendant otherwise had knowledge that Ricau was a real estate agent. These facts, however, are not inconsistent with the conclusion that Ricau was the owner of the notes. All of them might have existed, which they did, and yet not even have excited suspicion. In this instance they excited none.

While it is to be regretted that plaintiff and interveners have lost their notes to the extent of the pledge through the infidelity of their agent, still, as the notes were negotiable, and were accepted in pledge by defendant in due course, we are unable to grant them the relief for which they pray.

For the reasons assigned the judgment appealed from is set aside, and it is now ordered that plaintiff's and interveners' demands be rejected at their costs.

ROGERS, J., takes no part.

O'NIELL, C. J. (concurring). The decision that was rendered in the case of the Continental Bank & Trust Co. v. Times Publishing Co., 142 La. 209, 76 So. 612, L. R. A. 1918B, 632, is not important as a precedent, because there was no doctrine of law announced, except what was already written in the Negotiable Instrument Law (Act 64 of 1904). The only question in the case was, and the only question in every case like this is, whether the intention of the parties to the transaction as expressed in the promissory note was to make the promise to pay "an unconditional promise." The first section of the Negotiable Instrument Law declares:

"An instrument to be negotiable must * * * contain an unconditional promise or order to pay," etc.

The third section of the act declares:

"An unqualified order or promise to pay is unconditional, within the meaning of this act, though coupled with * * * a statement of the transaction which gives rise to the instrument."

The meaning is that, if the promise to pay in a promissory note is otherwise "an unqualified promise to pay," a statement in the note of the transaction for which it was given shall not per se render the promise subject to the conditions of the transaction.

There is no reason of public policy why a person should not or may not issue a negotiable promissory note—give an unconditional obligation—to pay an obligation which, as to the original payee, is only a conditional or contingent obligation. When that is done the maker of the note merely trusts the payee, much the same as when payment is made in cash in advance of the maturity of the obligation.

Of course, a statement in a promissory note of the transaction in which it was issued may be so worded as to make the promise itself a conditional one. In such case the reason why the note is not a negotiable instrument is that it lacks the essential of being "an unconditional promise to pay." But the mere statement in a promissory note that it is a rent note, and that the consideration is therefore to be received according to the terms and conditions of the contract of lease referred to, does not of itself make the promise a conditional promise or affect the negotiability of the note. I do not understand the doctrine of the Continental Bank & Trust Company's Case to be contrary to the proposition which I have stated. If it were so, I would suggest overruling the case.

There is one feature of the rent notes here in contest which, in the absence of a direct expression to the contrary, makes it plain to me that the notes were intended to be negotiable instruments. I refer to the fact that the notes were made payable to the order of

their makers and were indorsed by them. The only purpose of making a promissory note in that form, instead of making it payable to a named payee or order, is to make the note transferable by mere delivery. I suppose that our attention was not directed to that circumstance in the Continental Bank & Trust Company's Case. If we were wrong in our ruling in the case, it was only in our conclusion of fact that the intention of the parties, as expressed in the notes, was to make the promise a qualified or conditional or contingent promise.