O’NIELL, O. J.
 

 On the 28th of September, 1925, the Baldwin Realty Company, Inc., signed and issued four promissory notes, for $3,450 each, payable, respectively, one, two, three, and four years after date. The notes were made payable to the order of, and indorsed by, the maker, and were given in part payment for a sprinkler equipment furnished by • the Federal Equipment Company, Inc. The notes were'all alike, except as to the dates of ma
 
 *752
 
 turity. Here is a copy of the fourth note, the only one concerned in this litigation, viz.
 

 “No. 4. $3,450.00
 

 “Four years after date, for value received, I, we, or either of us, jointly, severally and in solido, promise to pay to the order of ourselves the sum of Thirty-four hundred and fifty ($3450.00) Dollars, in gold coin of the United States of America or of equivalent to the present standard weight and fineness, at the main office of the Canal Commercial Trust & Savings Bank, in New Orleans, Louisiana, and to pay interest thereon at the rate of seven (7%) per centum per annum from maturity until paid, together with ten (10%) per centum of the amount due thereon as attorney’s fees should it become necessary to place this note in the hands of attorneys for collection.
 

 “The makers, endorsers, guarantors and sureties hereby severally waive exemption from payment, demand, notice of noji-payment, protest, and all pleas of division and discussion, and agree that the payment hereof may be extended from time to time, hereby binding themselves in solido for the payment hereof in principal, interest, costs and attorneys’ fees, as herein provided.
 

 “This note is one of a series of four notes numbered from 1 to 4, inclusive, issued by the undersigned, all of the same date, tenor and effect, except as to date of maturity, amounting in the aggregate to the sum of Thirteen Thousand Eight Hundred ($13,800.-00) Dollars, all of which said notes are equally secured by Sprinkler contract made and executed by the undersigned to the Federal Equipment Company, Inc., subject to the terms of which said Sprinkler contract this note is issued, secured, negotiated and held.
 

 “Signed at New Orleans, Louisiana, this 28th day of December, 1925.”
 

 Soon after the notes were issued, they were acquired by Helion Dickson, who continued to own them until the 15th of January, 192¿, when he pledged them to the Mortgage & Securities Company to secure a loan of $11,000, represented by Dickson’s promissory note, payable eight months after date, and bearing interest at 8 per cent, from maturity.
 

 The first of the Baldwin Realty Company notes, maturing on the 28th of September, 1926, was paid promptly, and the amount was credited on the note of $11,000, which Dickson owed to the Mortgage & Securities Company, leaving a balance of $7,583.84 due on the note which Dickson owed the Mortgage & Securities Company, which had matured on the 15th of September, 1926. The Mortgage & Securities Company then demanded payment of the balance due on Dickson’s note of $11,000; and a settlement was had between the parties, as follows: The cash value of the remaining three notes of $3,450 each was ascertained by deducting a discount of 10 per cent, per annum, the result of which left $1,325.68 due to Dickson, after paying the balance of $7,583.84 due on his note of $11,000. • That note was canceled and the $1,325.68 due to Dickson was credited to his account on the books of the Mortgage & Securities Company, with a notation to the effect that the amount would be paid to him on collection of the last of the series of notes of $3,450. The three notes of $3,450 remained in the possession of the Mortgage & Securities Company; and, on the 1st of January, 1927, the company pledged the notes, with other notes, to the Interstate Trust & Banking Company, as trustee, to secure the payment of a series of 255 so-called equipment participating certificates, which were then issued and negotiated by the Mortgage & Securities Company, through the Interstate Trust & Banking Company, as trustee.
 

 
 *754
 
 . On the 15th of July, 1929, Dickson borrowed $2,163.24 from the Canal Bank & Trust Company, on his personal note payable 30 days after date, and secured the payment of the note by pledging to the bank 35 shares of stock in the Mortgage & Securities Company, and by assigning to the bank what he called his “right, title and interest in and to the note of $3,450.00 due September, 1929,” etc.
 

 A few days before this note of $3,450 fell due, Dickson and the Canal Bank & Trust Company notified the Baldwin Realty Company of Dickson’s claim of $1,325.68 equity in the note, and demanded that that amount should be paid to the Canal Bank & Trust Company for account of Dickson. The Interstate Trust & Banking Company had not theretofore heard of Dickson’s claiming an equity or interest in the note, and insisted that the Baldwin Realty Company should pay the full amount of $3,450 to the Interstate Trust & Banking Company as trustee for the holders of the 255 equipment participating certificates, for the security of which the note was pledged by the Mortgage & Securities Company. Meantime, the Mortgage & Securities Company had become insolvent and had gone into the hands of a receiver.
 

 The Baldwin Realty Company, to protect itself against the claim of Dickson and the Canal Bank & Trust Company, brought this proceeding against them and the Interstate Trust & Banking Company, to have their conflicting claims settled judicially, under the provisions of Act No. 123 of 1922, p. 253, deposited the sum of $3,450 into the registry of the civil district court, and prayed to be discharged from further liability on the note. The judge of the civil district court decided in favor of the Interstate Trust & Banking Company; and Dickson and the Canal Bank & Trust Company have appealed from the decision.
 

 If this note of $3,450 was a negotiable instrument, notwithstanding the expression in the last paragraph of the instrument, “subject to 'the terms of which said Sprinkler contract this note is issued, secured, negotiated and held,” the members of this court would be unanimous in the opinion that the judgment in favor of the Interstate Trust & Banking Company, as trustee for the holders of the Equipment Participating Certificates, is correct. Some of the'members of the court, however, are of the opinion that the clause quoted from the last paragraph of the note made it a conditional promise to pay, and therefore destroyed its negotiability; while other members of the court are of the opinion that, under the ruling in Tyler v. Whitney-Central Trust & Savings Bank, 157 La. 249, 102 So. 325, the note was a negotiable instrument, notwithstanding the reference to the “sprinkler contract,” in connection with which the note was given.
 

 Our opinion, however, is that it is not important in this case whether the note was negotiable, technically speaking, or nonnegotiable in the sense that the obligation to pay was subject to the terms and conditions of the sprinkler contract. The note was not only transferable, but transferable by mere delivery, because it was made payable to, and indorsed by, the maker. This is not a suit against the maker of the note; neither is the other party to the “sprinkler contract,” the original holder of the note, a party to this contest. If Dickson actually sold the note to the Mortgage & Securities Company, at a discount of 10 per cent., as we are convinced he did, the Mortgage & Securities Company had the right to negotiate the note, and could convey a valid title for the full amount of it, notwithstanding- the Mortgage & Securities Company owed Dickson a balance of $1,325.68 on the price for which the company had bought the note. Dickson testified that
 
 *756
 
 he Relieved that, in discounting the note, he retained an equity or interest in the note to the extent of $1,325.68; but the details of the transaction, as explained by the testimony of two witnesses who were ex-officers of the Mortgage & Securities Company, and who handled the transaction, show that the title to the note passed to the Mortgage & Securities Company, and that Dickson got credit on the books of the company for the $1,325.-86, as the balance due on the price. The fact that this balance was not to be paid to him until the company should collect the note did not make him a part owner of the note. 1-Ie knew that the company was apt to negotiate the note; and he trusted the company to pay him the $1,325.86 whenever the company might negotiate or collect the note. He was a large stockholder of the Mortgage & Securities Company, owning more than 400 shares of its stock, and had a drawing account of $7,500 a year with the company, on account of the profits he was earning in the extensive business which he was bringing to the company, as vice president of the Independent .¿Etna Sprinkler Company. The record leaves no doubt that, when he discounted the three notes of $3,450 with the Mortgage & Securities Company, he intended that the company might negotiate the notes and convey a good title for the face value of them, to any bona fide transferee.
 

 It is true that, at the end of the written assignment made by Dickson to the Canal Bank & Trust Company, the president of the Mortgage & Securities Company signed an acknowledgment, written by Dickson, thus: “We acknowledge receipt of the above assignment of the interest of Helion Dickson in and to the note of Baldwin Realty Company for $3,450.00, due September 28, 1929, and upon the payment of this note we will pay to the Canal Bank & Trust Company the sum of $1,325.6S, which is due Mr. Dickson upon the payment of this note.” But that was done on the 2d of October, 1928, — a year and nine months after the Mortgage & Securities Company had pledged the note to the Interstate Trust & Banking Company as trustee for the holders of the participating certificates. ■
 

 Our conclusion is that the decree that the Interstate Trust & Banking Company, as trustee, is entitled to the $3,450 in the registry of the court is correct.
 

 It is conceded by the Interstate Trust & Banking Company that there is an error in the judgment, in that it condemns Dickson personally to pay the bank the amount of the note of $3,450, with interest, attorney’s fees, and a protest fee of $3, and orders the fund deposited in court to be applied to the payment of the judgment. In that respect the judgment appealed from must be amended; and, accordingly, the costs of this appeal must be borne by the Interstate Trust & Banking Company, as trustee.
 

 The judgment appealed from is annulled in so far as it is a personal judgment against Helion Dickson; in all other respects the judgment is affirmed. The Interstate Trust & Banking Company, as trustee, is to pay the costs of this appeal; and Helion Dickson and the Canal Bank & Trust Company the costs incurred in the civil district court.
 

 OVERTON, LAND, and ST. PAUL, XL, dissent.