MANUEL MADERA, Plaintiff and Appellant, v. HERMINIO MADERA, INC., ET AL., Defendants and Appellants.

No. 6407. Argued January 16, 1935.—Decided December 13, 1935.

*Dubón & Ochoteco* and *B. F. Sánchez Castaño* for appellant. *R. Rivera Zayas* for appellees.

Mr. Justice Hutchison delivered the opinion of the court.

Manuel Madera, as assignee of José Madera, brought this action to recover the amount due on a promissory note (executed by Herminio Madera, Inc., Tetuán Tobacco Leaf, Inc., and Herminio Madera) and to foreclose a mortgage executed by the Tetuán Tobacco Leaf, Inc., as security for the payment of the note. The note and the mortgage were dated March 16, 1931. They arose out of certain provisions contained in a previous contract of March 3, 1931. The principal, interest, and maturity date specified in the note corresponded to the principal, interest, and maturity date of a like obligation assumed by Herminio Madera, Inc., Tetuán Tobacco Leaf, Inc., Herminio Madera, and others as parties to the previous contract. Certain portions of this contract were set forth in the mortgage as essential parts thereof.

The nonperformance of certain obligations set forth in the mortgage had been made the basis of an accelerating clause embodied in the note and in the mortgage. Nonperformance of like obligations specified in the previous contract had been made the basis of a similar accelerating clause in that contract. Plaintiff alleged that defendants had failed to perform a number of these obligations. Defendants answered that they had been unable to perform these obligations because plaintiff, an assignee, and his assignor, the original mortgagee, had failed to deliver to Herminio Madera, one of the defendants, certain shares of stock as provided by the contract of March 3, in terms as follows:

"It is mutually agreed between José Madera, Manuel Madera, and Herminio Madera that upon the execution of the mortgage in the registry of property in favor of José Madera on the Tobacco Palace Bldg., subject to the terms of this covenant, and the inscription of the said mortgage without defects and as provided for in this clause, that José Madera and Manuel Madera will deliver to Herminio Madera duly endorsed in blank the shares of stock that they may now hold of the corporation Alonso Riera & Co., Inc."

The district court found that plaintiff and his assignor had failed to endorse and deliver the stock and dismissed the action.

The question is as to whether this case comes within the general rule established by section 1053 of the Civil Code (1930 edition) or within an exception recognized in the final paragraph which reads as follows:

"In mutual obligations none of the persons bound shall incur default if the other does not fulfill or does not submit to properly fulfill what is incumbent upon him. From the time one of the persons obligated fulfills his obligation the default begins for the other party."

The parties to the contract of March 3 were José Madera, Herminio Madera, Manuel Madera, Bautista Madera, Herminio Madera & Hno. (a copartnership), Alonso Riera & Co., Inc., Tetuán Tobacco Leaf Incorporated ("lately

known as Herminio Mádera & Hno., Incorporated''), and Herminio Madera, Incorporated. José Madera was a member of the firm Herminio Madera & Hno. and a stockholder of Alonso Riera & Co., Inc. José and Manuel Madera had brought certain actions in the insular courts and in the United States District Court against Herminio Madera, Herminio Madera & Hno., and Alonso Riera & Co., Inc. Herminio Madera & Hno., Inc., ''now known as Tetuán Tobacco Leaf, Inc.,'' was also involved in these controversies. Bautista Madera and Manuel Madera were also involved ''and/or interested'' in various other suits or proceedings pending before the same courts against José Madera. In January 1927, Alonso Riera & Co., Inc., had acquired 710 shares, the same being all of the stock issued up to that time by the Combate Tobacco Corporation. In April 1928, Bautista Madera, by virtue of an agreement with José, Herminio, and Manuel Madera (who at that time owned and controlled all of the stock in Alonso Riera & Co., Inc.) acquired the 710 shares. The avowed purpose of all the parties to the contract of March 3, 1931, was to settle all pending claims, differences, and controversies.

The contract contained twelve clauses.

In the first, Herminio Madera and Alonso Riera & Co., Inc. renounced all claim to the 710 shares of stock transferred to Bautista Madera in April 1928, and ratified that transfer. Herminio Madera, for himself and for Alonso Riera & Co., Inc., undertook to have returned to the secretary of Combate Tobacco Corporation a canceled certificate of stock for 150 shares in the said corporation, which had been attached in a suit brought by Alonso Riera & Co. against the estate of Benigno Díaz and Alonso Riera & Co., Inc. He admitted that neither Benigno Díaz nor his estate had ever had any right or interest in the said certificate or in any of the stock of the Combate Tobacco Corporation. He undertook, for himself and in his representative capacity (that is on behalf of Herminio Madera & Hno.; Alonso Riera

& Co., Incorporated, lately known as Herminio Madera & Hno., Incorporated, and Herminio Madera, Incorporated), to obtain a dismissal of an action or mandamus proceeding brought by Aurelio Prado against the Combate Tobacco Corporation and others, and to obtain from Aurelio Prado an acknowledgment that he had never had any right or interest whatever in any of the stock of the Combate Tobacco Corporation. He agreed, for himself and in his representative capacity, to obtain from Angel Prado an acknowledgment that Prado had never had any right or interest in any of such stock. He undertook (for himself and as a member of the partnership, Herminio Madera & Hno., and in his further representative capacities as aforesaid) to obtain the dismissal of an action or proceeding brought by Herminio Madera & Hno. against José Madera as well as the dismissal of any other pending suits in which José Madera and/or Bautista Madera and/or Manuel Madera and/or Combate Tobacco Corporation were defendants and/or involved and/or interested.

In the second clause, José Madera, for and in consideration of the sum of $12,000 to be paid as subsequently provided in the same instrument, resigned and renounced all his rights and interest in Alonso Riera & Co., Inc. and in Herminio Madera & Hno., with a proviso that such resignation or renouncement would not be effective until the $12,000 was paid or the payment thereof guaranteed by proper securities acceptable to him.

The third clause announced the previous payment of $2,000 in leaf tobacco and provided for the payment of the remaining $10,000 in gold (United States Currency) January 1, 1936, with interest at 8 per cent payable monthly in advance on the first of every month.

The fourth clause provided for a mortgage on the Tobacco Palace Building, property of the Tetuán Tobacco Leaf, Inc. It further provided that the Tobacco Palace should "not be subject to liens or encumbrances of any class or na-

ture amounting to more than FIFTY-TWO THOUSAND DOLLARS ($52,000)." Herminio Madera undertook, for himself and in his representative capacity, to reduce and cancel in the registry of property before August 30, 1931, "any rights or encumbrances now existing or affecting the aforesaid Tobacco Palace Bldg., over said sum of $52,000." There was a proviso for an alternative method, as a substitute for cancellation in the registry of property, with reference to a certain mortgage given to secure notes or bonds amounting to some $30,000 which was to be reduced to $10,000.

In the fifth clause, Herminio Madera, for himself and in his representative capacity, agreed to pay all taxes on the Tobacco Palace Building as well as the interest on any mortgage or other outstanding obligation affecting or encumbering the said property and to insure the same against loss by fire or earthquake for a sum not less than $75,000.

In the seventh clause, Herminio Madera, for himself and in his representative capacity, undertook to obtain the execution of certain instruments and to pay all expenses including registrar's fees.

In the ninth clause, Herminio and José Madera agreed upon the dissolution of the firm, Herminio Madera & Hno., Herminio Madera to assume all liabilities.

In the tenth and eleventh clauses, Herminio Madera, for himself and in his representative capacity, undertook to change the name of the corporation Herminio Madera & Hno., Incorporated, and thereafter not to use the words "& Hermano".

The sixth, eighth, and twelfth clauses were as follows:

"*Sixth:* It is agreed between all parties to this agreement as an essential condition hereof that upon failure to pay the interest on the $10,000, or any part thereof, and/or the failure to comply with the covenant stipulated in the preceding fifth paragraph or any of them, and/or upon failure to comply, and/or fulfill any of the obligations contracted by these presents, on the part of Herminio Madera, and/or any or all of the different entities and/or corporations,

in whose names the said Herminio Madera appears here and now, the entire $10,000 or the part thereof still pending payment shall become due and payable and Mr. José Madera shall be entitled to proceed to its collection.''

'' * * * * * * *

"*Eighth:* It is agreed that upon the execution and inscription without defects in the Registry of Property of San Juan, P. R., of the deed of mortgage to which reference is made in the preceding paragraph, Mr. José Madera will take the necessary steps to dismiss any and all actions and proceedings now pending before the Insular or Federal Courts of Puerto Rico, in which José Madera is plaintiff or petitioner; and it is further agreed that upon the execution and inscription without defects in the Registry of Property of San Juan, P. R., of the deed of mortgage to which reference is made in the preceding paragraph, Mr. Manuel Madera will take the necessary steps to dismiss any and all actions and proceedings now pending before the District Court of the United States for the District of Puerto Rico, in the case of Manuel Madera v. Alonso Riera & Co., Inc., Herminio Madera & Hermano, Inc., and Herminio Madera, Equity No. 1578, all of which proceedings shall be dismissed, Herminio Madera, for himself and in the capacity with which he hereby appears, obliging himself to consent and agree to such dismissals without costs and without damages of any class or nature whatsoever.

"That for and in consideration of the covenants stipulated herein and subject to the terms of this contract, Herminio Madera, Herminio Madera & Hermano, Tetuán Leaf Tobacco, Inc., lately known as Herminio Madera & Hermano, Inc., Alonso Riera & Co., Inc., and Herminio Madera, Inc., forever release, liberate, and exonerate José Madera, Manuel Madera, and Bautista Madera, as well as Combate Tobacco Corporation, their heirs, successors or assigns of all responsibility of whatever class or nature in law, equity, or otherwise, for any debt, claim, action, chose in action, damages, or otherwise, accrued, or which hereafter accrue in favor of any of them by reason of or in virtue of any or all of the suits, actions, and proceedings instituted by either of them, against any of them, or in which they may be involved, or affected in any way, the said Herminio Madera, Herminio Madera & Hermano, Tetuán Leaf Tobacco, Inc., lately known as Herminio Madera & Hermano, Inc., Alonso Riera & Co., Inc., and Herminio Madera, Inc., giving here and now to the said José Madera, Manuel Madera, and Bautista Madera, as well as Combate Tobacco Corporation, jointly and severally receipt in full pay-

ment and satisfaction of any such debts, claims, actions, choses in action, damages or otherwise, including any debt or claim that may now appear as owing on any of the books of records or accounts of the said Herminio Madera, Herminio Madera & Hermano, Tetuán Leaf Tobacco, Inc., lately known as Herminio Madera & Hermano, Inc., Alonso Riera & Co., Inc. and Herminio Madera, Inc.

"It is mutually agreed between José Madera, Manuel Madera and Herminio Madera that upon the execution of the mortgage in the Registry of Property in favor of José Madera on the Tobacco Palace Bldg., subject to the terms of this covenant, and the inscription of the said mortgage without defects and as provided for in this clause that José Madera and Manuel Madera will deliver to Herminio Madera duly endorsed in blank the shares of stock that they may now hold of the corporation Alonso Riera & Co., Inc."

" * * * * * * *

"*Twelfth:* That the defaulting party shall forfeit and pay to the other of them the sum of $2,000 as liquidated damages; and then that these presents shall become void."

Whether the covenant in the final paragraph of the eighth clause is an independent agreement between the covenantors José and Manuel Madera, and the covenantee Herminio Madera, or a condition precedent or condition subsequent to other obligations, elsewhere assumed by such covenantee jointly or jointly and severally with other parties to the contract, depends upon the intention of the parties at the time of the contract. If the parties to the contract intended that the obligation to pay the balance of $10,000 should be contingent upon endorsement in blank and delivery of certain certificates of stock by Manuel and José Madera to Herminio Madera, or that such endorsement and delivery were conditions precedent to the obligation as to payment of taxes and interest and as to insurance against fire and earthquake, some satisfactory evidence of that intention should be found somewhere in the contract itself. We find no such evidence.

The undertaking to pay interest and taxes and to keep the property insured against fire and earthquake is unqualified. By the express terms of the second clause, José Madera's renouncement of all his rights and interest in Alonso

Riera & Co., Inc. and in Herminio Madera & Hno. was to become effective on payment of the $12,000 or upon the furnishing of securities acceptable to him, not upon endorsement and delivery by him of any certificate of stock. The $12,000 was to be paid as subsequently provided in the contract itself. The subsequent covenant for delivery of stock made no reference to the $12,000 or to the manner in which the same was to be paid. The third clause of the contract reads as follows:

"*Third:* that the $12,000 to which reference is made in the preceding clause,. shall be paid to José Madera, in the following manner: $2,000 (TWO THOUSAND DOLLARS), in American leaf tobacco, which has been delivered to him prior to the execution of this contract, and TEN THOUSAND DOLLARS ($10,000) to be paid in gold (United States Currency), on the first of January, 1936, which sum shall bear interest at the rate of eight per cent (8%) per annum, payable monthly in advance on the first day of every month, at the Royal Bank of Canada, San Juan Branch, or at any other place in Puerto Rico that José Madera may designate."

Certainly, this gives no inkling of any purpose to make the payment of $10,000 on January 1, 1936, conditional on endorsement and delivery of any certificate of stock. The obligation is as unqualified as is the obligation to pay taxes and interest and to keep the Tobacco Palace insured as set forth in the fifth clause. To make either or both of these obligations unmistakably dependent on performance of the covenant contained in the final paragraph of the eighth clause would have been a very simple matter. The failure to do this is significant. It becomes even more significant in view of the avowed purpose as set forth in the preamble, namely:

" . . . to settle between all the parties to this agreement, any, all and every claim and/or difference existing among them and with the purpose of settling once and forever all such claims and/or differences, and any and all suits, actions or proceedings in law, equity or otherwise now pending before the insular courts of Porto Rico and/or the United States District Court for Porto Rico, in and

about, or concerning the rights and/or interests and/or properties of each, any and everyone of the declarants. . . . ''

The purpose of ''settling once and forever all such claims'' would be defeated in a large measure by the imputation of an intention to make either the obligation as to payment of taxes and interest or the obligation as to payment of the $10,000 dependent on the performance or nonperformance of the covenant as to endorsement and delivery of stock. The provision in the twelfth clause for the payment of $2,000 by the defaulting party as liquidated damages is also in line with the definite purpose of all parties concerned as set forth in the preamble and militates against the notion of interdependence between the covenant as to endorsement and delivery of stock and the obligation to pay in accordance with the terms of the accelerating clause.

There was some conflict in the testimony as to the value of the stock. The testimony for plaintiff. tended to show that it was worthless. The defendant, Herminio Madera, testified that he needed it in order to dissolve the corporation, Alonso Riera & Co., Inc. He himself owned or controlled 80 per cent of the stock in that corporation, however, and no explanation has been offered as to why he needed more than this for the purpose of dissolution. In any event, the question of value was not a pivotal point. Whatever the value of the stock itself may have been, a certificate in the hands of José Madera was practically worthless after the renouncement of all his rights and interest in Alonso Riera & Co., Inc., which became effective on his acceptance of the note and of the mortgage executed as security for the payment thereof.

The testimony in support of the averment that defendants had been unable to pay interest and taxes and to perform certain other obligations because. plaintiff and his assignor had failed to endorse and deliver the stock is not very persuasive. The district judge made no finding on this issue. The real issue was whether defendants were relieved

of their obligations by reason of the failure to endorse and deliver the stock. Technically the question of causal relation between the failure to endorse and deliver the stock and the inability of defendants to perform their obligations was not involved. We say "technically" because from beginning to end this is a technical case. A stronger showing as to the alleged reason for the inability of defendants to meet their obligations might have appealed to the conscience as well as to the sympathy of the court. If we were convinced that substantial justice had been done in the district court, we would not be disposed to aid appellant in obtaining a reversal on technical grounds.

 The principal, if not the sole, consideration for the undertaking to pay the balance of $10,000 as well as for the undertaking to pay interest and taxes and to keep the Tobacco Palace insured was the renouncement and waiver by José Madera of all his rights and interest in Alonso Riera & Co., Inc. and in the firm of Herminio Madera & Hno. José Madera, by that renouncement and waiver, divested himself of his title to any stock in the corporation Alonso Riera & Co., Inc., and the endorsement and delivery of any certificate or certificates as additional evidence of such divestiture would have been a mere formality. The covenant, on the part of José Madera as to the endorsement and delivery of stock was, at most, a negligible part of the consideration and his failure to endorse and deliver the stock was but a partial and immaterial failure of consideration. Any breach of the covenant by José and Manuel Madera or by either of them could have been compensated in damages even without the express provision of the twelfth clause for liquidated damages in the sum of $2,000.

We have not delved deeply into this aspect of the case. As a starting point for further investigation see: 13 C. J. 567, et seq., sections 538, 539, and 540, paragraphs "Partial Consideration" and "Entire Consideration"; "Restatement of the Law of Contracts," as adopted and promulgated by

the American Law Institute, sections 268 (subsection 2), 274, and 275; *Southern Surety Co.* v. *MacMillan Co.*, 58 Fed. (2d) 541, 549; *Teton Auto Co.* v. *Northwestern Pure Bred Sow Co.*, 49 Pac. (2d) 643; and cases cited; *Investors Utility Corp.* v. *Challacombe*, 39 S. W. (2d) 175, 179; and *Zambeth* v. *Commodores Land Co.*, 136 So. 644.

Our conclusion is that the covenant to endorse in blank and deliver the certificates of stock and the obligation to pay interest and taxes and to keep the Tobacco Palace insured as well as the obligation to pay the balance of $10,000 were not mutual obligations within the meaning of the final paragraph of section 1053, *supra*.

So far we have assumed, for the sake of argument, that both the note and the mortgage were subject to all of the terms and conditions of the previous contract and that the three contracts were one and inseparable. As pointed out at the beginning, this action was brought on the note and the mortgage, not on the previous contract. If we are correct in the conclusion already reached, other questions raised by appellant in his brief become academic. Hence, we shall briefly notice the first four only of appellant's nine assignments. They follow:

"First error: The court erred in dismissing the complaint on the ground that the plaintiff had failed to comply with one of the terms of the agreement of March 3, 1931, which had not been sued on, since the complaint was based on a mortgage deed executed by other persons on March 16, 1931.

"Second error: The court erred in relieving the defendants from the payment of the note on the ground that plaintiff, Manuel Madera, and the former owner of the note sued on, José Madera, failed to deliver to defendant, Herminio Madera, with blank endorsements, the shares held by them on March 3, 1931, in the corporation Alonso Riera & Co., Inc., since said obligation arose out of an agreement mutually entered into, separately and independently, by said José and Manuel Madera with Herminio Madera exclusively, without said obligation being related in any way to the cause or consideration by virtue whereof the note sued on was executed.

"Third error: The court erred in finding that the agreement of March 3, 1931, and the mortgage deed executed on March 16, 1931, constituted a single transaction.

"Fourth error: The court erred in relieving defendants, Herminio Madera, Inc. and Tetuán Tobacco Leaf, Inc., from all liability, on the ground that the plaintiff and José Madera failed to deliver to defendant, Herminio Madera, with blank endorsements, the shares held by them in the corporation Alonso Riera & Co., Inc., in compliance with the terms of the agreement of March 3, 1931, since this was not a mutual and correlative obligation as between the corporations and themselves."

The brief for appellees does not discuss these questions separately, nor shall we.

The note was several. It was payable to José Madera or his order. So far it was an unqualified promise to pay and was presumably intended to be a negotiable instrument. It contained, however, two clauses which read in part as follows:

" . . . We execute this promissory note for value received and in consideration also of the stipulations of an agreement subscribed by us and other persons on the third of March, nineteen hundred and thirty-one. . . .

"This promissory note is secured by a mortgage constituted by the maker of it Tetuán Tobacco Leaf, Inc., on the piece of property known as Tobacco Palace Building . . . and this promissory note is subscribed and delivered by us, subject, besides, to all the conditions stipulated in the said mortgage deed."

If the makers of the note had intended to burden it with any conditions contained in the previous contract, the simple and natural way of effecting this result would have been to add to the recital as to consideration the words "and subject to the terms and conditions of that contract"; or, better still they might have said "subject to the terms and conditions of that contract, a copy of which is hereto attached." When the makers of the note wished to make it subject to all of the conditions contained in the mortgage they had no difficulty in making their purpose perfectly clear. The

contrast between the phraseology of the two clauses indicates that the choice of words was deliberate and that the makers of the note understood the difference between a mere descriptive reference to the consideration and a modification of the promise to pay by making payment contingent on the performance of obligations contained in another contract. The first of the two clauses did not make the note subject to the terms and conditions of the previous contract. See Section 4 of the Puerto Rican Law of Negotiable Instruments of 1930 (sec. 356 of the Code of Commerce, 1932 edition); 3 R.C.L. 883, sec. 69; Id. 912, sec. 102; Id. 918, sec. 112; 33 A.L.R. 1174; 37 A.L.R. 655; 14 A.L.R. 1126; 61 A.L.R. 815; *Voges* v. *Ward*, (Fla.) 123 So. 785; *Ferring* v. *Berwey*, 229 N.W. 46; *Arrington* v. *Mercantile Protective Bureau*, 24 S.W. (2d) 383; *Shawano Finance Corporation* v. *Julius*, 254 N. W. 355; *People's Bank* v. *Porter*, 208 P. 200; *King Cattle* v. *Joseph*, 198 N. W. 798; *Powell, etc.* v. *Greenleaf* (Vermont) 162 Atl. 377; *Pflueger* v. *Broadway Trust Co.*, 351 Ill. 170, 184 N. E. 318; *Sturgis National Bank* v. *Harris Trust, etc.*, 184 N. E. 589; *Gordon* v. *Colonial Trust Co.*, 167 Atl. 773; *First National Bank of Hoquiam* v. *De Witt* (Tenn.), 81 S. W. (2d) 396, 398; *Hawley* v. *Bingham*, 6 Oregon 76; *Markey* v. *Corey*, 66 N. W. 493; *Mountjoy Parts Co.* v. *San Antonio National Bank*, 12 S. W. (2d) 609; *Taylor* v. *Curry* (Mass.), 12 Am. Rep. 661; *Dole* v. *Considene*, 195 Ill. App. 311; *National Bank of Newbury* v. *Wentworth*, 218 Mass. 30, 105 N. E. 626; *Culbreath* v. *Guiterman*, 115 So. 303; *Bank of Sherman* v. *Apperson*, 4 Fed. 25; *National Bank* v. *Badham* (S. C.), 68 S. E. 536, 547; *Strand Amusement Co.* v. *Fox*, 87 So. 332; *Tyler* v. *Whitney Central Trust & Savings Bank* (La.), 102 So. 325; and *Snelling State Bank* v. *Clasen* (Minn.), 157 N. W. 643.

In the fifth clause, as we have shown, Herminio Madera acted "for himself and in the capacity with which he appears in this contract." The entities represented by him were Herminio Madera & Hermano, Alonso Riera & Company,

Inc., Tetuán Tobacco Leaf, Inc., and Herminio Madera, Inc. These were the parties who, with Herminio Madera, assumed the obligations enumerated in the fifth clause. If these obligations were conditioned on the endorsement in blank and delivery of the stock referred to in the final paragraph of the eighth clause, one would naturally expect to find Herminio Madera appearing, not individually as sole covenantee, but "for himself and in the capacity with which he appears in this contract" as in the fifth clause. The fact that Herminio Madera appeared for himself as covenantee, not "for himself and in the capacity with which he appears in this contract," as elsewhere in the contract, may or may not be the logical explanation of the failure on the part of the Tetuán Tobacco Leaf, Inc., as mortgagor, to make the mortgage subject to the endorsement and delivery of stock certificates to Herminio Madera. In any event, the mortgage, in terms at least, was not made subject to such endorsement and delivery. To this extent, taking the note and the mortgage together as contemporaneous documents relating to the same subject matter, it might well be argued that the mortgagor and the makers of the note (with the possible exception of Herminio Madera) either did not consider at all the covenant as to endorsement and delivery of stock or else regarded it as an independent agreement between the covenantors and and Herminio Madera as covenantee.

The parties to the covenant apparently contemplated that the mortgage on the Tobacco Palace when executed would be made "subject to the terms of this covenant." This stipulation between the parties to the covenant that the mortgage should be so executed was not self-executory. It did not operate to make the mortgage when executed subject to the terms of the covenant, if the mortgage was not otherwise made subject thereto. It was, at most, an implied promise on the part of Herminio Madera that the mortgage would be so executed. The endorsement and delivery of stock, if the covenant is to be literally construed, was conditioned

upon the execution and registry of a mortgage made subject to such endorsement and delivery. Admit that such endorsement and delivery would have been a condition precedent to foreclosure of a mortgage executed in the manner contemplated by the covenant. The fact remains that the mortgage, as executed, was not made subject to the terms of the covenant. The covenant, even as between the parties thereto, did not make the obligation of such a mortgage dependent on the endorsement and delivery of stock.

Appellees, in their brief, mention the fact that a number of the clauses contained in the previous contract were of necessity embodied in the mortgage but fail to show that this, without more, made the mortgage subject to other provisions of the previous contract not so included. Possibly something more might have been made of this point if it had been adequately developed in the brief. Inasmuch as appellees rely (as did the court below) mainly on the first of the two clauses contained in the promissory note, we need not now speculate upon what might have been the effect of the inclusion of certain provisions of the previous contract in the mortgage and the exclusion of others therefrom, if in the previous contract the endorsement and delivery of stock had been made a condition precedent to the performance of other obligations, such as the payment of the $10,000, interest and taxes and the taking out of insurance as provided in that contract.

The district court relied on the following authorities: *Riera* v. *Macías de Riera*, 42 P.R.R. 560; *Iglesias Estate* v. *Bolívar*, 11 P.R.R. 422; *Portela* v. *Porto Rican American Tobacco Co.*, 4 P.R.R. (2d ed.) 29; and *Palacios* v. *Arzuaga*, 37 P.R.R. 270. An examination of the facts in these cases will suffice to distinguish them from the case at bar.

The judgment appealed from must be reversed and in lieu thereof the judgment of this court will be entered for plaintiff.