This is a suit in which plaintiff, claiming to be the holder in due course of a check in the sum of $525.00, seeks to recover said amount from defendant as the maker of said instrument.
On or about January 15, 1948, defendant and A. B. Bonnette, plaintiff's brother, were negotiating with respect to the sale by Bonnette to defendant of a second-hand school bus. Defendant contends that he reached an agreement with Bonnette on the sale price of $525.00, and that he agreed to consummate the purchase upon making a "trial run" of the vehicle, to New Orleans and return, in order to determine *Page 128 
whether or not the vehicle would serve his purpose. A. B. Bonnette strenuously denies any such conditional agreement, vigorously contending that the sale was completed and that he made no guarantee or warranty of any sort as to the condition of the bus. However this may be, it is established that defendant, Ponthieux, on or about the said date of January 15, 1948, made and delivered to A. B. Bonnette a check in the sum of $525.00 drawn on Planters Trust Savings Bank of Opelousas. It is further established by the great preponderance of the evidence that defendant acquainted A. B. Bonnette at the time of the giving of the check with the fact that he, Ponthieux, had no account with the Planters Bank at Opelousas and that, consequently, the check was of no value. Ponthieux explains this rather unorthodox procedure on the ground that A. B. Bonnette insisted on having something in the nature of a promise to pay the agreed purchase price, as evidence of their agreement, and, further, that in the dim light of his office the check was taken at random from a number of blank checks which he kept available for the use of his customers in the territory in which he was engaged in selling candy. This rather bizarre explanation is nonetheless corroborated as to its salient features by defendant's wife and an employee, who also substantiate plaintiff's testimony as to the conditional nature of his agreement to purchase the bus.
In any event, a few days after the stated transaction, defendant and an employee set forth for New Orleans in the ex-school bus. Their journey was fraught with inconvenience, trouble and difficulty. Tires blew out, the radiator hose and water pump gave way, necessitating replacement on arrival in New Orleans, and the motor consumed quantities of oil in the extent of some 17 quarts on the round trip, according to their testimony. Immediately upon the return to Marksville defendant sent word to A. B. Bonnette that he refused to purchase the bus. Bonnette, in response to defendant's message, went to Ponthieux's dwelling that same evening, at which time the parties heatedly discussed the matter. We call attention at this point to a significant bit of testimony on the part of one of plaintiff's witnesses in the instant case, who accompanied A. B. Bonnette to defendant's domicile on the occasion of the event referred to. This witness testified that before the parties lapsed into the use of the French language, with which he was unfamiliar, he heard A. B. Bonnette make the statement to Ponthieux that he had not made any guarantee as to the condition of the bus.
A short time after this interview, despite Ponthieux's request for the return of his check and the rescission of the conditional agreement, A. B. Bonnette tendered the check in question to the Union Bank at Marksville, where, upon his endorsement, he received the sum of $525.00 in cash, and the bank transmitted the check for collection through its usual banking channels. Ponthieux, failing to receive the return of the check, became suspicious, called the bank, and was advised by the cashier, Mr. Gremillion, that the check had been cashed, upon receipt of which information Ponthieux advised the said official of the bank that the check was no good, that he had no account with the Planter's Bank of Opelousas, and that, assuredly, it would be returned unpaid. In turn Mr. Gremillion contacted Mr. A. B. Bonnette and advised that he would be required to make good to the bank the amount he received.
At this point, for the first time in this rather involved sequence of events, the plaintiff in this suit, Cyprien Bonnette, brother of A. B. Bonnette, appears as an actor in this comedy of errors. For it was at this stage that A. B. Bonnette contacted his brother, Cyprien, explained that he had spent the money he received from the bank, which he would have to make good, and asked his brother to make this amount good to the bank for him. Cyprien, obviously a model of brotherly devotion, immediately agreed, and produced the sum of $525.00 which he transmitted to Mr. Gremillion, cashier of the Union Bank at Marksville, either in person or by the hand of his brother, before defendant's check was returned. Gremillion, at and upon receipt of the dishonored check, covered the amount with the sum furnished by Cyprien Bonnette, and delivered the check to Cyprien. *Page 129 
Some time later Cyprien returned to the bank in person and tendered the check for collection. Despite Mr. Gremilion's reminder that Ponthieux had no account with the drawee bank, Cyprien Bonnette insisted that the effort be made, and, on advice of Gremillion, deposited the check with the understanding that it would be charged to his account when it was returned unpaid. This event took place in due course, whereupon, after demand and refusal of payment by defendant, this suit was instituted.
The defense is based upon two very obvious grounds, first, that plaintiff was not a holder in due course, in good faith, and without knowledge of existing equities between defendant and A. B. Bonnette, the payee of the check, and, second, that the mechanical defects in the motor vehicle were of such a degree and extent as to make the same unacceptable to defendant. Specific allegations in support of these defenses were incorporated in defendant's answer.
After trial there was judgment in favor of plaintiff in the sum of $462.73, representing the amount sued for, less certain credits for repairs. In his judgment our learned brother of the District Court took occasion to observe that "plaintiff was not a holder in good faith and in due course of the check forming the basis of his suit, * * *".
There is no possible question as to the correctness of the above quoted conclusion reached by the Judge of the District Court. Plaintiff not only was not a holder in due course and good faith but he was definitely a holder in bad faith because he knew at the time that the check would be dishonored and the reasons therefor. Indeed, under the facts established upon trial of this case there is some serious question as to whether plaintiff in reality was the holder of the check. There are substantial grounds which would justify the conclusion that the plaintiff, Cyprien Bonnette, never was the holder of the check, but that his only connection with this transaction was to advance his brother the sum of $525.00. However this may be, we think it unnecessary to indulge in a discussion of this point since, in our opinion, the matter may be easily disposed of on other grounds.
Beyond any question of a doubt plaintiff was not a holder in good faith and in due course of the check which serves as the basis for this action, and, accordingly, he is bound by any and all equities existing between this defendant and A. B. Bonnette, the original payee of the check.
It matters not that the seller made no express warranty of the vehicle, for it is well established in this State that a seller warrants the thing sold as being fit for the intended purpose, unless such warranty is expressly waived. Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871; Savoie v. Snell, 213 La. 823, 35 So.2d 745.
Under the provisions of Article 2520 of the Civil Code redhibition, that is, the avoidance of a sale by reason of vices or defects in the thing sold, is available to a buyer when such defects render the thing useless or make its use so inconvenient and imperfect "that it must be supposed that the buyer would not have purchased it, had he known of the vices".
We think it is definitely established in the instant case by almost uncontroverted testimony that the bus in question was so afflicted with vices and defects of various kinds that this defendant, the buyer, would not have purchased the vehicle with knowledge of such defects.
The evidence further preponderates in favor of defendant's contention that his purchase was conditioned upon the trial trip. The actions of both defendant and A. B. Bonnette are consistent with such a conclusion. It is further significant in this connection that A. B. Bonnette did not make the effort to enforce the sale and collect the purchase price, but rather chose to burden his brother with the responsibility for attempting to collect an obligation which, on his part, would have been met with a direct and, apparently, a well substantiated defense. This may or may not have been planned or designed, but, in any event, the legal bad faith of this plaintiff opened the door to the same character and *Page 130 
nature of defense as might have been asserted between the original parties.
The defendant in the instant case has fully discharged the requirements imposed by Article 2530 of the Civil Code of proving the existence of the vice before the sale. The New Orleans trip was made within a week of the negotiations and the record is utterly devoid of any evidence of intervening usage of the bus by defendant to an extent commensurate with unusual wear and tear which would have caused the imperfections and defects which made their appearance.
For the reasons assigned the judgment appealed from is reversed and set aside, and there is now judgment in favor of defendant rejecting plaintiff's demands, together with all costs.
TALIAFERRO and KENNON, JJ., concur.