For the reasons assigned the convictions and sentence are affirmed.

72 So.2d 319

**GENERAL MOTORS ACCEPTANCE CORP.**

**v.**

**DAIGLE.**

No. 41680.

March 22, 1954.

Rehearing Denied April 26, 1954.

J. Minos Simon, Lafayette, for relator.

Ellis, Lancaster, Wright & Daly, New Orleans, amicus curiae.

Jerome E. Domengeaux, Lafayette, for respondent.

MOISE, Justice.

General Motors Acceptance Corporation, alleging that it was the holder in due course of a negotiable note executed by John Daigle, and on which he refused to pay his second monthly installment, brought executory proceedings against a 1953 Chieftain Fordor Pontiac Sedan purchased by Daigle from the Louisiana Motors, Inc., which is the trade name for Larry Louviere, on which a chattel mortgage had been given to secure the note herein involved.

Daigle was successful in resisting the writ of seizure and sale and obtained a restraining order. He denied the allegations of plaintiff's petition and charged the dealer, Larry Louviere, and the General Motors Acceptance Corporation with fraud and conspiracy, in that the car which he purchased was represented to him to be a new demonstrator, whereas, it was actually a used car. Having surrendered his 1949 Chevrolet car as a part payment on the contract and having been deprived of any car whatsoever through the present proceedings, Daigle bonded the Pontiac herein involved for his use. In his reconventional demand, he asked for damages, but damages have not been urged in this Court.

On trial of the rule nisi, the district judge held that the General Motors Acceptance Corporation was a holder in due course and was entitled to recover on the note. It denied defendant's prayer for a preliminary injunction. Writs were granted by this Court, and the matter now comes before us under our supervisory jurisdiction.

The record shows that on February 18, 1953, this car was sold to Blaine Cotter. He was the first purchaser, The sale was made by the Louisiana Motors, Inc. for the sum of $3,089.99. The car was described as a new demonstrator and had been floor planned to the Louisiana Motors, Inc. After Cotter's purchase, Larry Louviere paid

General Motors Acceptance Corporation, title owner and note holder, and received the cancelled note. Under the floor plan system, the car was originally sold by the Pontiac Division, and an attorney-in-fact for Louviere at Pontiac Headquarters signed a note which was in turn sold to General Motors Acceptance Corporation, and *possession* was with Louviere. The contract and note were cancelled and satisfied when Louviere paid General Motors Acceptance Corporation.

In May of 1953, Cotter, the first purchaser, traded the controversial Pontiac to Louisiana Motors, Inc. and purchased from them another car. During the three months which Cotter owned the controversial car, it suffered a collision.

On August 8, 1953, the defendant, John Daigle, purchased from Louisiana Motors, Inc. this car for the price of $2,900, plus fees, financing and insurance. He traded in his old car, a 1949 Chevrolet, and financed the remainder of $2,015.04. Louisiana Motors, Inc. handled all the papers for financing, but the actual financing was to be assigned to General Motors Acceptance Corporation. The act of sale described the car, which had been previously sold, as a new demonstrator. The chattel mortgage in favor of Louisiana Motors, Inc. also described the car as a new demonstrator. All forms, note and chattel mortgage were provided by General Motors Acceptance Corporation and given to the Louisiana Motors, Inc. The note secured by the mortgage was payable at the office of General Motors Acceptance Corporation. Application for a title certificate to be forwarded to the Motor Vehicle Division of the Department of Revenue was made out by Louisiana Motors, Inc. The blank revealing the number of previous title and sale to Cotter was not filled in at the time the paper was signed by Daigle. Daigle's note was endorsed in blank by the Louisiana Motors, Inc. and was forwarded to General Motors Acceptance Corporation, together with the other documentary forms furnished by General Motors Acceptance Corporation. On August 10, 1953, General Motors Acceptance Corporation issued its check of $1,-627 to the Louisiana Motors, Inc. before receipt of the title certificate which would make this car both marketable and merchantable. The Motor Vehicle Commissioner for the State of Louisiana issued the title certificate of ownership on August 18, 1953. Daigle proved that the blank on the title application showed a previous title was filled in after he signed the papers. In October, 1953, he discovered that the car was a used car and refused to pay the installments.

The evidence conclusively shows that the car purchased by Daigle was a used car, and the trial judge found this to be a fact.

Two questions are poised before this Court in order to make a decision.

1. Was General Motors Acceptance Corporation charged with knowledge of the infirmities in the instrument which it pur-

chased from the Louisiana Motors, Inc., thereby precluding the plaintiff from being a holder in due course?

We answer the first question in the affirmative.

2. When was the title to the car merchantable and marketable?

■ The statutes seem to have answered that question. The LSA–Revised Statutes 32:706 provided:

"On and after December 15, 1950, except as provided in R.S. 32:705 and 32:712, no person buying a vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said vehicle until the purchaser shall have obtained a certificate of title to said vehicle."

On August 18, 1953, or a day or so thereafter, when General Motors Acceptance Corporation received the title papers from the Department of Revenue, the contract became completed. General Motors Acceptance Corporation had full knowledge and was informed that the car was a used car, having a previous title. It had only to compare the bill of sale and mortgage with the title papers.

The Negotiable Instruments Act, Act No. 64 of 1904, Section 52, LSA–Revised Statutes 7:52, recites in part:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

\*    \*    \*    \*    \*    \*

"(4) That at the time that it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

■ Under the above provision, a purchaser is not a holder in due course until the transaction is complete. When the General Motors Acceptance Corporation purchased this note the car was neither marketable nor merchantable.

The fourth ground under the act urged is a question of whether the General Motors Acceptance Corporation had any notice of any infirmity in the instrument or defect in the title of the person negotiating it.

■ The title under consideration had a definite defect, because General Motors Acceptance Corporation was the actor in the first transaction when the car was sold to Cotter. The car was represented in the bill of sale and mortgage to Daigle to be a new demonstrator, whereas, the papers in possession of the General Motors Acceptance Corporation showed this not to be correct. The title certificate to make the car marketable and merchantable showed on its face that it was a used car, having been sold to another.

In the suit of White System of New Orleans, Inc. v. Hall (In re: Hall), reported in the 219 La. 440, at page 449, 53 So.2d

227, at page 230, our Court made the following pertinent observation:

"Counsel for defendants have cited several cases from other jurisdictions wherein the courts refuse to recognize that finance companies may be holders in due course in installment credit sales. Commercial Credit Corporation v. Orange County Machine Works, 34 Cal.2d 766, 214 P.2d 819; Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S.W.2d 260, 128 A.L.R. 726; Buffalo Industrial Bank v. De Marzio, 162 Misc. 742, 296 N.Y.S. 783, reversed on other grounds [Sup.], 6 N.Y.S.2d 568. See also Adelson, The Mechanics of the Installment Credit Sale, 2 Law and Contemporary Problems, 218, 225; Note, 53 Harv.L.Rev. 1200; Note, 57 Yale L.Jour. 1414; Note, 25 St. John's L.Rev. 107. The basis of those decisions is a feeling by the judiciary that, by using the Negotiable Instruments Law as a shield, the finance company is given an unfair advantage over the consumer buyer. There is undoubtedly some justification for this view, but steps to equalize their positions and regulate installment credit sales should be taken by the Legislature, and not by this court in view of the clear provisions of the Negotiable Instruments Law.

"Since we have concluded that plaintiff in the instant case is a holder in

due course, it is immaterial whether the cooler was defective or not."

■ This suit is distinguishable from the White suit because infirmity was shown and it was actual. We have decided that in order to preclude recovery on negotiable paper of the sort herein involved, the notice must be actual. Maxwell v. W. B. Thompson & Co., 175 La. 252, 143 So. 230; Tyler v. Whitney-Central Trust & Savings Bank, 157 La. 249, 102 So. 325; Sandifer v. Stephens, 8 La.App. 546.

The case of Hester v. Davidson, La.App., 55 So.2d 280, is not apposite. There the holder of the check had no knowledge of a prior agreement between defendant purchaser of a car and an auctioneer.

Again in General Motors Acceptance Corporation v. Schoneke, 19 La.App. 593, 140 So. 111, the plaintiff had no knowledge of the misrepresentations, if any, made by the automobile salesman.

Therefore, the authorities cited by counsel for plaintiff do not support his position.

We, therefore, conclude that plaintiff is not a holder in due course, and it is, therefore, bound by the same equities which existed between the original payee and the defendant. Bonnette v. Ponthieux, La. App., 41 So.2d 127; 10 C.J.S., Bills and Notes, § 323; Robichaux v. Block, 144 La. 859, 81 So. 371; Citizens Loan Corporation v. Robbins, La.App., 40 So.2d 503.

It is ordered that the writs heretofore issued are now made peremptory, and it is further ordered that the General Motors Acceptance Corporation be enjoined from further proceeding by executory process.

Judgment reversed.

On Motion for Rehearing

Rehearing denied.

McCALEB, J., dissents from the refusal of a rehearing.