SAMUEL, Judge.
On November 9, 1957, a corporation known as Al’s Fishing & Rental Tools, Inc., purchased two automobiles for a cash consideration from defendant, a Ford automobile dealer, and later during the same month mortgaged both vehicles to the Guaranty Bank in Gretna for $3,710.40. One of these cars was returned to defendant because of certain defects and Al’s was given another car in exchange therefor. The vehicle so returned was sold by defendant to plaintiff on April 7, 1958, under a written bill of sale which warranted that there were no liens, claims or encumbrances against the automobile, for $3,899.96 ($2,-933.00 of which was the actual sale price, the balance being finance and insurance charges), subject to a credit of $773.00 (consisting of a net trade-in allowance of $723.-00 for plaintiff’s old car and a cash payment of $50.00), leaving a balance of $3,126.96, for which amount plaintiff signed a promissory note, secured by a chattel mortgage, payable in thirty-six monthly installments of $86.86 each. Plaintiff never received a certificate of title for the car nor was such a certificate ever issued or applied for in his name. The note was transferred, without recourse, by defendant to Associates Discount Corporation.
Plaintiff, who was in military service and stationed in Tennessee, inquired of defendant on two occasions about his title to the car. On each occasion he was informed that Associates Discount had the title but on each and on other additional occasions the latter informed plaintiff that they did not have his title. During the month of February, 1959, plaintiff directed an inquiry to the Department of Revenue, Motor Vehicle Division, relative to the car and he was informed by that division that the title was not listed in his name and that the Gretna Bank held a mortgage on the same. He was behind in all of his monthly payments and did not pay the installments due on May 12 and June 12. On June 24, 1959, under threat of foreclosure by Associates *905 and acting upon legal advice obtained at his military base, he voluntarily surrendered the car to Associates and was given by them a complete discharge from any further liability on the note.
In the meantime, on May 1, 19S9, Al’s paid its indebtedness to the bank and received the certificate of title in its name. Al’s returned the title to defendant, who in turn gave the title to Associates. On July 1, 1959, Associates sold the car for $1,400.-00 to a third party purchaser. However, the title received by that purchaser is dated September 15, 1959, and reflects a transfer from Al’s to that purchaser with no intervening title in plaintiff’s name. The mortgage by Al’s held by the bank was can-celled when ownership was transferred by title on September 15, 1959. Plaintiff had paid twelve installments on the note, a total of $1,042.32, to Associates prior to the voluntary surrender.
On November 10, 1959, plaintiff filed this suit in which he prays for damages in the total amount of the value of. the automobile he traded in, the cash deposit, the payments made to Associates, various items of travel and other expense, and attorney’s fees. The trial court rendered judgment in favor of plaintiff in the amount of $773.00, which represents the value of the automobile traded in plus the cash payment; no recovery was allowed for the other expenses prayed for nor for the payments made on the note, the latter being disallowed because the trial court was of the opinion that the amount involved represented a fair rental value for the use and enjoyment of the automobile. Defendant has appealed from this judgment. Plaintiff has neither appealed nor filed an answer to defendant’s appeal.
Our jurisprudence is now well settled to the effect that the Vehicle Certificate of Title Law, LSA-R.S. 32:701 et seq., particularly R.S. 32:705, does not render the sale of a motor vehicle void by reason of a transfer which is not executed in conformity with that statute, but simply causes the title to be imperfect and unmarketable until the certificate is acquired; and that, as between the parties, title to motor vehicles, although imperfect, can be transferred under the provisions of Art. 2456 of the LSA-Civil Code even in the absence of a compliance with the statute. Flatte v. Nichols, 233 La. 171, 96 So.2d 477; H. G. Williams Motor Company v. Zeagler, La.App., 92 So.2d 291; Sprowl v. Foshee, La.App., 86 So.2d 638; General Motors Acceptance Corporation v. Daigle, 225 La. 123, 72 So. 2d 319; Transportation Equipment Company v. Dabdoub, La.App., 69 So.2d 640.
Plaintiff recognizes the principle of law set out in these cases but contends that the instant case is distinguishable therefrom. His counsel argue that here no title was ever issued to plaintiff, nor could a clear title have been issued until May 1, 1959, when Al’s paid its mortgage to the bank, and that defendant’s failure to obtain or deliver a proper certificaté concealed the fact that the automobile was being sold subject to a prior existing mortgage of $3,710.00, which alone exceeded the actual value of the car.
While we are of the opinion that there was no bad faith on the part of defendant, we are also of the opinion that the actions and non-actions of defendant constitute negligence on its part. At the time of the exchange by Al’s of the car subsequently sold to plaintiff for the new car given to that corporation by defendant it was intended that the bank mortgage would be transferred from the first car to the second. This transfer was not effected and the title to the car here involved was never obtained by the defendant; it remained in the possession of the bank. Transfer of the mortgage and return of the title by the bank actually were merely clerical functions as contended by defendant, but the failure to have these things done was the result of defendant’s fault.
Under the authorities herein cited, as between plaintiff and defendant valid *906 title to the vehicle was transferred by the bill of sale. And we are of the opinion that plaintiff is not entitled to a judgment because we are unable to find that he was damaged as a result of defendant’s actions or lack thereof. Under the provisions of Section 708 of the Vehicle Certificate of Title Law (LSA-R.S. 32:708) the chattel mortgagee has the right to retain the certificate of title until the amount of the mortgage is liquidated. Plaintiff suffered no harm in connection with the title certificate itself because, in any event, he had no right to obtain possession of that certificate until the mortgage held by Associates had been paid in full.
Nor was plaintiff harmed by reason of the fact that the chattel mortgage placed on the car by Al’s and held by the bank had not been cancelled prior to September 15, 1959. As pointed out above, this mortgage had been paid in full on May 1, almost two months before plaintiff surrendered the car to Associates and more than six months before this suit was filed. And that bank mortgage was actually cancelled almost two months before this suit was filed. Even if plaintiff had demanded a cancellation of the bank mortgage before May 1, such a cancellation, in all probability a simple thing for defendant to accomplish, would have defeated an earlier action by plaintiff on the warranty contained in the bill of sale.
Additionally, in order to obtain a return of the purchase price our law requires that the purchaser either return the car to the seller or make a bona fide attempt to do. so (Sprowl v. Foshee, supra) and here such a return was impossible because plaintiff no longer had the car (H. G. Williams Motor Co. v. Zeagler, supra).
For the reasons assigned, the judgment appealed from is annulled and reversed, and it' is now ordered that there be judgment in favor of the defendant and against the plaintiff, dismissing the latter’s demands at his cost.
Reversed.