CULPEPPER, Judge.
The plaintiff, Universal CIT Credit Corporation, brought this suit against H. H. Crosby, a used car dealer, to enforce a “repurchase agreement”, whereby Crosby agreed to repurchase from UCIT a certain automobile. Crosby filed a third party demand against Horace Poullard, the original purchaser of the vehicle from Crosby. After a trial on the merits the lower court rendered judgment on the principal demand in favor of UCIT and against Crosby enforcing the repurchase agreement, i. e., decreeing Crosby to be the owner of the automobile and granting judgment against Crosby in favor of UCIT for the purchase price. The district judge did not adjudicate the third party demand by Crosby against Poullard. Crosby’s rights under the third party demand were reserved for future proceedings. From this judgment the defendant, Crosby, has ' appealed.
The facts show that on July 22, 1961, the defendant, Crosby, sold a used Buick to Poullard, part of purchase price being represented by a note and chattel mortgage in the sum of $2,171.10. Then Crosby assigned the note “Without Recourse” to UCIT, subject to the provisions of a “repurchase agreement”, which reads in pertinent part as follows:
“(a) If you repossess or recover a car and tender it at our place of business within 90 days after maturity of the earliest instalment still wholly in default (all payments and adjustments and all premium refunds received by you having been applied for purposes of this agreement on the earliest in-stalments due), we shall purchase the car from you. The purchase price shall be payable on demand and shall be the amount then remaining unpaid under the contract, including any amount added to the contract relating to insurance on the car.”
Although it is immaterial to our decision of this case, the Buick automobile originally covered by the chattel mortgage was wrecked and, in order to settle a dispute as to insurance, Crosby voluntarily replaced this automobile with a Ford. The original note and chattel mortgage remained in effect under a “Substitution of Commodity” form.
Poullard later defaulted on the note and “turned over” the car to UCIT, under an agreement which he signed reading as follows:
“TO UNIVERSAL C.I.T. CREDIT CORPORATION:
“I hereby acknowledge that simultaneously herewith, I have voluntarily turned over to you the vehicle described below:
“1959 Ford Custom Serial No.”
“This shall not constitute a waiver on my part of the right of appraisement nor a waiver on your part of any rights you may have, including, without limitation, the right to establish a deficiency against me in the manner provided by law if you decide to do so.
“The reason for granting this release is that the above described automobile is and was at time of acquisition defective in that transmission was faulty and said automobile was not capable of performing the purpose for which it was acquired.”
At the time Poullard “turned over” the automobile to UCIT, the certificate of title to the vehicle was in possession of UCIT, as holder of the first mortgage. This certificate is filed in evidence and shows on its face that Horace Poullard is the owner. Furthermore, Poullard has not executed the “Assignment of Title”, appearing on the reverse side of the certificate.
UCIT did not file suit against Poullard on the note or mortgage. Instead, it delivered possession of the vehicle to Crosby *360 and demanded that he repurchase it under the “Repurchase Agreement” quoted above. It is perhaps worthy of comment that UCIT did not offer to reassign the note and chattel mortgage to Crosby. Following Crosby’s refusal to comply with the repurchase agreement, this suit followed.
Crosby’s first contention, and the one which we think is decisive of this case, is that he is not obligated to comply with the repurchase agreement until he has been tendered by UCIT a marketable title, evidenced by a certificate of title to the vehicle. Crosby contends that since the title certificate shows Horace Poul-lard to be the owner, and he has not executed the assignment of title, UCIT has not tendered to Crosby a marketable title to the vehicle. Crosby argues that this suit to enforce an agreement to purchase the said vehicle must therefore be dismissed.
LSA-R.S. 32:706 provides in pertinent part that “ * * * no person buying a vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said vehicle until the purchaser shall have obtained a certificate of title to said vehicle; * * The jurisprudence interpreting this statute is now well established that the purchaser of a motor vehicle does not acquire a marketable title until he obtains a certificate of title. General Motors Acceptance Corporation v. Daigle, 225 La. 123, 72 So.2d 319; Transportation Equipment Co. v. Dabdoub, La.App., 69 So.2d 640; Sprowl v. Foshee, La.App., 86 So.2d 638; Williams Motor Co. v. Zeagler, La.App., 92 So.2d 291; Lemaire v. Pellerin, La.App., 102 So.2d 493.
In Hamner v. Domingue, 82 So.2d 105 (1st Cir.App.1955) the court held as follows :
“LSA-R.S. 32:706, quoted in part above, does not provide that no valid title shall be perfected until the purchaser obtains a title certificate, but that no marketable title shall be perfected until that time. The term 'marketable title’ does not connote that the vendor cannot sell, but that he cannot enforce an agreement to buy in absence of same, Words & Phrases (Perm.Edition), Volume 26A, pp. 35-55, Verbo 'Marketable Title’. Thus third-opponent Hernandez could not have enforced the agreement of another to purchase his car until he had received his certificate of title on September 2, 1953.”
The holding in the Hamner case, supra, is squarely in point here and we think it is absolutely correct. Thus, UCIT cannot enforce the agreement by Crosby to repurchase the vehicle until UCIT has obtained a title certificate in its own name and tendered a marketable title to Crosby. A tender of the title certificate in the name of Horace Poullard will clearly not suffice. Expensive and doubtful litigation might be required to obtain a transfer of the title certificate from Poullard to Crosby. Such a possibility clearly constitutes a cloud on the title. Furthermore, the repurchase agreement itself states that Crosby “ * * shall repurchase the car from you (meaning UCIT)”, and not from Poullard. We note also that Crosby has not been tendered the note and chattel mortgage, which would possibly enable him to obtain a title certificate through foreclosure proceedings, but we express no opinion as to whether the tender of the note by UCIT to Crosby would change the result in this case. Crosby agreed to repurchase the car from UCIT and he is clearly entitled to receive from them a marketable title.
Having reached the conclusion that the principal demand by UCIT against Crosby must be rejected, we find it unnecessary to pass on Crosby’s third party demand against Poullard.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that *361 there be judgment herein in favor of the defendant, H. H. Crosby, d/b/a Crosby Used Car Sales, and against the plaintiff, Universal CIT Credit Corporation, rejecting plaintiff’s demands without prejudice at its cost. In view of our rejection of the principal demand, the third party demand by H. H. Crosby against Horace Poullard is dismissed without prejudice. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.